UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNETH E. ANDREW and SHEILA M. ANDREW,<br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY<br>    Defendant. | No. 3:17-cv-1192 (MPS) |

**RULING ON MOTION TO DISMISS**

Plaintiffs Kenneth E. Andrew and Sheila M. Andrew (collectively, "Plaintiffs") filed this action in state court against their homeowner's insurance provider, Allstate Insurance Company ("Allstate"), for failure to pay for damages to the basement walls of their home caused by cracking concrete. (ECF No. 1.) Allstate removed the case to this court on July 18, 2017. (ECF No. 1.) Plaintiffs bring claims of breach of contract (Count One) and unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a–816 *et seq.* ("CUIPA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq.* ("CUTPA") (Count Two). Allstate has moved to dismiss both claims on the grounds that the insurance policy at issue did not cover the alleged damage, and the CUIPA/CUTPA claim on the additional ground that Allstate's denial of coverage was not in bad faith. (ECF No. 22.) For the reasons set forth below, the motion to dismiss is GRANTED.

**I.    Factual Allegations**

According to the allegations in the amended complaint, Plaintiffs have owned their home in Willington, Connecticut, since 2002. (ECF No. 20 ¶ 4.) Allstate has insured the home at all relevant times. (*Id.* ¶ 5.) Plaintiffs have made all required insurance payments. (*Id.* ¶ 6.)

1

In December 2016, while attempting to sell their home, Plaintiffs were notified that the basement walls had a series of horizontal and vertical cracks. (*Id.* ¶ 7.) Plaintiffs began to investigate this "pattern cracking" by consulting area professionals and learned that the condition of their basement walls was due to a "chemical compound found in certain basement walls" that were constructed between the early 1980s and late 1990s using concrete "most likely from the J.J. Mottes Concrete Company." (*Id.* ¶¶ 8-9.) Plaintiffs learned that the aggregate used in manufacturing the concrete during that time period contained a chemical compound which, "with its mixture with the water, sand and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble." (*Id.* ¶ 10.)

Plaintiffs allege that "[a]t some point between the date on which the basement walls were poured and late December of 2016, the basement walls suffered a substantial impairment to their structural integrity." (*Id.* ¶ 12.) As a result, Plaintiffs claim that "[i]t is only a question of time until the basement walls of [their] home will fall in due to the exterior pressure from the surrounding soil." (*Id.* ¶ 13.)

Plaintiffs notified Allstate of the condition and their claim for coverage on February 3, 2017. (*Id.* ¶¶ 18-19.) Allstate denied their claim for coverage, claiming that the homeowners' policies issued to the Plaintiffs do not afford coverage for the condition affecting the basement walls. (*Id.* ¶ 20.) As a result of the denial, Plaintiffs expect that replacing their basement walls, along with related restoration of their deck, landscaping, driveway, and walks, will cost at least $250,000. (*Id.* ¶ 24.)

Plaintiffs' Homeowner's Policy ("Policy") has three "Sections." (ECF No. 22-2 at 24.)[1] The provisions at issue in this case appear in "Section I – Your Property," which addresses property coverage and contains the following subsections: "Coverage A Dwelling Protection," "Coverage B Other Structures Protection," "Coverage C Personal Property Protection," "Additional Protection," and "Section I—Conditions." (*Id*.)

Under "Section I – Your Property," the Policy states:

*Losses We Cover Under Coverages A and B:* We will cover sudden and accidental direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

*Losses We Do Not Cover Under Coverages A and B:* We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by:
. . . .
12. Collapse, except as specifically provided in Section I—Additional Protection, under item 11, "Collapse."
. . .
In addition, we do not cover loss consisting of or caused by any of the following:
15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
. . .
d) rust or other corrosion, mold, wet or dry rot;
. . .
g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
. . . .
22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

---

[1] Although the Policy was not attached to the complaint or formally incorporated by reference, as discussed below, "the court may nevertheless consider [a document] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and quotation marks omitted). The Policy attached to Allstate's motion to dismiss was effective beginning December 2, 2016. (ECF No. 22-2 at 6.) While Plaintiffs refer to "the terms of all of the homeowner's *policies*" issued to them by Allstate (ECF No. 20 ¶ 19 (emphasis added)), they do not allege that a different policy applies and cite throughout their brief in opposition to the motion to dismiss the Policy attached by Allstate, and no other policy.

3

> . . .
> c) materials used on repair, construction, renovation or remodeling . . . .

(*Id.* at 29-31.)

The "Additional Protection" portion of Section I states:

> 11. Collapse
> We will cover:
> (a) the entire collapse of a covered building structure;
> (b) the entire collapse of part of a covered building structure; and
> (c) direct physical loss to covered property caused by (a) or (b) above.
>
> For coverage to apply, the collapse of a building structure specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
> . . .
> (b) hidden decay of the building structure;
> (c) hidden damage to the building structure caused by insects or vermin;
> . . .
> (f) defective methods or materials used in construction, repair, remodeling or renovation.
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

(ECF No. 22-2 at 38.)

Plaintiffs also allege that Allstate participates in the Insurance Services Office, Inc. ("ISO"), a "cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims." (ECF No. 20 ¶ 28.) The ISO is allegedly "instrumental in drafting policy provisions and . . . prepar[ing] interpretations or advice as to the meaning of these provisions." (*Id.* ¶ 29.) Plaintiffs allege that, through participation in ISO, Allstate has knowledge of the number of "concrete decay" claims that have arisen in northeastern Connecticut. (*Id.* ¶ 31.) Through the ISO, Allstate allegedly knows that most, if not all, insurers responding to concrete decay claims by homeowners in northeastern Connecticut have attempted

to deny coverage on the grounds that the condition results from causes excluded from the homeowners' policies, such as "ordinary wear and tear," "water beneath the surface of the ground," "earth movement and/or settling," "homeowner negligence in failing to waterproof the exterior of the concrete," or on the grounds that the claims are untimely. (*Id.* ¶ 32.)

Plaintiffs allege that Allstate gave them a "knowingly false and misleading reason for the denial of coverage," notwithstanding its knowledge of the "collapse" provisions of the Policy. (*Id.* ¶ 34.) According to Plaintiffs, by denying their claim for coverage, Allstate "has become a part of or confirmed its participation in an insurance industry wide practice of denying coverage for concrete decay claims, notwithstanding the clear provisions of the homeowner's insurance policies" it issued to Plaintiffs. (*Id.* ¶ 35.) Thus, Plaintiffs claim that Allstate has "failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" by "arbitrarily refus[ing] to pay a claim which a reasonable person would determine is covered by one or more" of the policies issued to Plaintiffs. (*Id.* ¶ 36.) Plaintiffs claim that this has become part of Allstate's "general business practice." (*Id.* ¶ 37.)

In support of these claims, Plaintiffs cite in their amended complaint Allstate's involvement in at least four other cases involving homeowners experiencing the same damage and Allstate's refusal to provide coverage, under identical policy language: *Carney v. Allstate Ins. Co.*, No. 3:16-CV-00592 (VLB) (D. Conn.); *Ford et al. v. The Standard Fire Ins. Co. et al.*, No. WWM-CV-16-6011041-S (Windham Super. Ct.); *Lees et al. v. Allstate Ins. Co.*, No. 3:15-CV-01050 (VAB) (D. Conn.); and *Neborsky et al. v. Allstate Ins. Co.*, No. TTD-CV-16-6011467-S (Tolland Super. Ct.).

Further allegations in the amended complaint are discussed in the analysis below.

## II.     Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I take the plaintiffs' factual allegations in the complaint "to be true and [draw] all reasonable inferences in" their favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In deciding a Rule 12(b)(6) motion, I may consider documents attached to, integral to, or incorporated by reference in the complaint. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations omitted).

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Connecticut Medical Ins. Co. v. Kulikowski,* 286 Conn. 1, 5 (2008) (citation and quotation marks omitted).

> If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning . . . . When interpreting an insurance policy, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result…. As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.

*Id.* at 5-6 (citations, quotation marks, and alterations omitted).

### III. Discussion

Allstate moves to dismiss all of Plaintiffs' claims. It argues that the unambiguous language of the Policy does not cover Plaintiffs' alleged loss, and that, because the Policy does not afford coverage, Plaintiffs have failed to state a claim for breach of contract or violation of CUIPA or CUTPA. For the reasons that follow, I agree.

#### A. Breach of Contract

##### 1. Applicable Policy

Allstate claims that the damage to Plaintiffs' home was excluded from coverage by the plain language of the Policy in effect at the time of the claimed loss. (ECF No. 22-1 at 2.) Plaintiffs allege that they "promptly notified the defendant of the condition of their basement walls on February 3, 2017," and by doing so, they "made a timely claim for coverage of the loss in accordance with the terms of all of the homeowner's policies issued to them by the defendant." (ECF No. 20 ¶ 19.) Plaintiffs refer throughout the amended complaint and their opposition papers to "the homeowner's *policies*" but do not allege that a policy other than the Policy attached to Allstate's motion to dismiss, effective beginning December 2, 2016, applies to their claims, or that Allstate incorrectly relied on the Policy, rather than on another policy or another version of the Policy, in denying their claim for coverage. Rather, Plaintiffs cite specific provisions of the Policy throughout their opposition brief. (*See, e.g.*, ECF No. 23 at 5-6.) As a result, although Plaintiffs did not attach the Policy to their complaint, I must decide whether they have stated plausible claims under the Policy.

##### 2. "Collapse" Coverage

Plaintiffs claim that under the Policy, Allstate "agreed to provide coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or

methods in construction." (ECF No. 20 ¶ 21.) Plaintiffs argue that the terms of the Policy appear to provide coverage for the collapse of a building structure or part of a building structure, and that the Policy does not define "collapse," a term the Connecticut Supreme Court has already defined broadly to mean any "substantial impairment to the structural integrity" of a building. (ECF No. 23 at 5 (citing *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987).) Plaintiffs argue that they allege such a structural impairment caused by one of two "enumerated perils" set forth in the "collapse" provisions of the Policy, i.e., "hidden decay or "defective methods or materials" used in the construction of the home. (*Id*.; ECF No. 22-2 at 38.) Plaintiffs further argue that, although the Policy states that a covered collapse must be "a sudden and accidental direct physical loss," the term "sudden" is ambiguous and does not necessarily denote temporal abruptness, because many of the enumerated perils in the collapse provision "contemplate damage occurring over a period of time." (ECF No. 23 at 8.) Finally, Plaintiffs argue that, even if "sudden" means temporally abrupt, the amended complaint passes muster because it includes allegations that "the process of decay," though occurring "over the course of years," "may cause sudden events," such as "a series of sudden events where the basement walls bulge and shift in some increment or pieces of the concrete become dislodged and fall[] to the floor." (ECF No. 20 ¶¶ 14-15.) Plaintiffs also allege that the process "causes stress upon the concrete bonds culminating in a release point where the concrete fractures in some increment," and that "these release points can fairly be considered discrete sudden events." (*Id*. ¶ 16.)

I find that Plaintiffs fail to allege a collapse that is "sudden," as required for coverage under the Policy. As noted, the Policy language on "Collapse" under "Additional Coverages" specifies that, "[f]or coverage to apply, the collapse of a building structure . . . must be a sudden and accidental direct physical loss." (ECF No. 22-2 at 38.) In the context of an insurance policy

8

involving "sudden and accidental" pollution, the Connecticut Supreme Court held that "sudden" "included a temporal quality, which requires that the onset of the release in question occurs quickly or happens abruptly." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536 (2002). The Court, reviewing dictionary definitions, "acknowledge[d] that, the word sudden can be used to describe the *unexpected nature*, as well as *abrupt onset*, of the event being described." *Id.* at 540 (emphasis added). But it concluded that in the context of the phrase "sudden and accidental," because "accidental" already included an element of unexpectedness, "sudden" had to be accorded a temporal element to avoid rendering it mere surplussage. *Id.* at 540-41.

Following the logic of *Buell*, this Court and state trial courts have ruled in favor of insurance companies in concrete decay cases where insurance policies require "sudden and accidental" losses, or otherwise contain language requiring that the loss be temporally abrupt.[2] *See, e.g.*, *Rudeen v. Allstate Ins. Co.*, No. 16-cv-1827 (MPS), 2018 WL 1401978, at *5-7 (D. Conn. Mar. 20, 2018) (granting Allstate's motion to dismiss where policy required a "sudden and accidental direct physical loss"); *Lees v. Allstate Ins. Co.*, No. 15-cv-1050 (VAB), 2017 WL 5906613, at *6 (D. Conn. Nov. 30, 2017) (granting motion for summary judgment where policy required "a sudden and accidental direct physical loss"); *Manseau v. Allstate Ins. Co.*, No. 16-cv-1231 (MPS), 2017 WL 3821791, at *3–*5 (D. Conn. Aug. 31, 2017) (granting motion to dismiss); *Adams v. Allstate Ins. Co.*, No. 16-CV-1360 (JBA), 2017 WL 3763837, at *4 (D. Conn. Aug. 29,

---

[2] Pending before the Connecticut Supreme Court is the certified question of whether the definition of "collapse" given in *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246 (1987) requires coverage under the "collapse" provisions of particular homeowners' insurance policies in the concrete decay cases. *See Karas v. Liberty Ins. Co.*, No. 3:13-cv-01836 (SRU), 2018 WL 2002480 (D. Conn. Apr. 30, 2018); *Vera v. Liberty Mut. Fire Ins. Co.*, No. 3:16-cv-72 (RNC), 2018 WL 3014112, at *5 (D. Conn. June 15, 2018). I note, however, that the policies in *Karas* and *Vera* included no definition or qualification of "collapse," other than its express exclusion of "cracking," which makes those cases distinguishable. Here, unlike in *Beach*, *Karas*, and *Vera*, coverage is limited to collapses that are "sudden and accidental."

9

2017) (same); *Clough v. Allstate Ins. Co.*, No. 17-CV-140 (JBA), 2017 WL 3763841, at *5 (D. Conn. Aug. 29, 2017) (same); *Miller v. Allstate Ins. Co.*, No. 16-CV-2059 (JBA), 2017 WL 3763425, at *4 (D. Conn. Aug. 29, 2017) (same); *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 14-CV-1150 (VLB), 2017 WL 706599, at *7 (D. Conn. Feb. 21, 2017) (granting Allstate's motion for summary judgment); *Alexander v. General Ins. Co. of America*, No. 3:16-cv-59, transcript of oral ruling, ECF No. 22 at 23 (D. Conn. July 7, 2016) (granting motion to dismiss where policy at issue defined collapse as an "abrupt falling down or caving in"); *Jemiola v. Hartford Cas. Ins. Co.*, No. CV-15-6008837-S, 2017 WL 1258778, at *1 (Conn. Super. Ct. Mar. 2, 2017) (unpublished) (granting summary judgment where policy defined collapse as "an abrupt falling down or caving in"); *Toomey v. Central Mut. Ins. Co.*, Docket No. CV-15-6009841-S (Conn. Super. Ct. Jud. Dist. of Tolland Aug. 3, 2017) (unpublished) (granting summary judgment where policy defined collapse as "an abrupt falling down or caving in"). I, again, reach the same conclusion here: "sudden," as used in the phrase "the collapse of a building structure . . . must be a sudden and accidental direct physical loss," unambiguously refers to a temporally abrupt event.

Plaintiffs' argument that the term "sudden" is ambiguous because some of the covered causes of collapse, such as "hidden decay" and "hidden insect infestation," occur gradually rests on a misreading of the plain language of the Policy. (ECF No. 23 at 8.) That language makes clear that it is the "collapse" that must be "sudden," not the cause of the collapse. (ECF No. 22-2 at 38 ("[T]he collapse . . . must be a sudden and accidental direct physical loss caused by . . . hidden decay of the building structure.").) As I have highlighted in other decisions involving similar facts, the Court in *Alexander* explained it as follows during a colloquy with Plaintiffs' counsel:

> Mr. Lindequist: But the collapse has to be caused by one of the enumerated perils, one of which is the cave[-in] that is hidden from view . . . .

> The Court: So here we go. Let's use insect damage. There's termites in the house. No collapse. They're eating away; every day they're eating away. No collapse. Finally, they eat enough that the beam fails. . . . Now there's coverage. Now you have a collapse or falling in. The fact that it was caused by termites and it was a slow process doesn't mean you didn't have an abrupt collapse . . . ."

*Alexander*, No. 3:16-cv-59, transcript of oral ruling, ECF No. 22 at 13–14 (D. Conn. July 7, 2016).[3]

The Allstate Policy unambiguously affords coverage once the specified hidden processes, such as decay or insect infestation, result in a sudden and accidental collapse. *See id.*; *see also Metsack*, 2017 WL 706599, at *7.[4]

Because "sudden," as used in the collapse provision of the Policy, unambiguously means temporally abrupt, Plaintiffs must have plausibly alleged that any collapse occurred abruptly—not merely unexpectedly—for coverage to have applied. Even when the allegations are construed in the light most favorable to them, Plaintiffs have not alleged plausibly that the damage to their home constituted or resulted from a temporally abrupt collapse. To the contrary, the loss described in the

---

[3] I recognize that the policy language in *Alexander* was somewhat different than that at issue here, but the point is that there is nothing necessarily ambiguous about a provision that affords coverage for temporally abrupt events caused by gradual processes.

[4] In support of their position, Plaintiffs urge the Court to adopt the reasoning of *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262, 1268 (M.D. Fla. 2012) (denying summary judgment, in part by finding that the inclusion of "sudden" in the definition of "loss" in a policy that covered insect damage rendered the provision ambiguous). Unlike the Connecticut Supreme Court's decision in *Buell*, the *Kelly* decision is not binding on this court. I therefore agree with other courts in this District, holding that, in this context, "sudden" unambiguously means temporally abrupt. Plaintiffs also rely on *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009), where the court concluded that a "collapse" provision did not require a sudden event to afford coverage. By its own terms, however, *Dalton* is distinguishable because the collapse provision there made no mention of a "sudden" event and did not otherwise qualify the term "collapse" except to exclude bulging, shrinking, and cracking. 557 F.3d at 90. I note, however, that at least one court in this district has found *Kelly* and *Dalton* persuasive in a concrete decay case against Allstate. *See Maki v. Allstate Ins. Co.*, -- F. Supp. 3d --, 2018 WL 3057729, at *1-2 (D. Conn. June 20, 2018) (denying a motion to dismiss by Allstate in a concrete decay case involving identical policy language, citing *Kelly* and *Dalton*).

complaint has involved a "process of decay occur[ring] over the course of years." (ECF No. 20 ¶ 14.) While Plaintiffs allege that "[a]s the chemical reaction progresses and the strength of the basement walls weaken, external forces *may cause* a series of sudden events where the basement walls bulge and shift in some increment or pieces of concrete become dislodged and fall[] to the floor" (*Id*. ¶ 15 (emphasis added)), at most that statement alleges that the gradual process of decay Plaintiffs describe *could possibly* cause visible effects that happen temporally abruptly; they do not allege that any such temporally abrupt events have actually occurred in their house. Further, their allegation that "[i]t is only a question of time until the basement walls of the plaintiffs' home will fall in due to the exterior pressure from the surrounding soil" only underscores that the loss here involves a gradual process rather than a sudden event. (*Id.* ¶ 13.) These allegations do not set forth a plausible claim that Plaintiffs have suffered "a sudden and accidental direct physical loss." (ECF No. 22-2 at 38.)

Plaintiffs further allege that their "sudden and accidental loss" was evidenced by "release point[s] where the concrete fractures in some increment," culminating in a "cracking condition." (ECF No. 20 ¶ 16.) Plaintiffs allege that "these release points can fairly be considered discrete sudden events." (*Id*.) But simply calling the moment before a crack appears a "release point" does not allege either that there was a "collapse" or that any collapse was "sudden," as required by the Policy. The coverage applies to "collapses," not to "cracking" or to the "release points" that allegedly produce it. Indeed, "collapse" is defined expressly to *exclude* mere "cracking." (ECF No. 22-2 at 39); *see Hurlburt v. Mass. Homeland Ins. Co.*, --- F. Supp. 3d ---, 2018 WL 1035810, at *8 (D. Conn. Feb. 23, 2018) (finding that, "[a]bsent a collapse," the cracking that the plaintiffs alleged was "precisely the type of loss the [p]olicy specifically excludes"); *Manseau*, 2017 WL 3821791, at *4 (finding that the plaintiffs' allegations of cracking failed to allege a coverable

collapse under identical policy language). It is thus the collapse, and not the cracking or "release point," that must be sudden for coverage to apply. And nowhere does the complaint suggest that the alleged "substantial impairment to [the] structural integrity" of the basement walls in the Andrews's house (ECF No. 20 ¶ 12), which invokes the definition of "collapse" articulated in *Beach*, was "sudden." To the contrary, the complaint pleads that the "substantial impairment" occurred "[a]t some point between the date on which the basement walls were poured and late December of 2016" (*id.* ¶ 12), in what was obviously a gradual process given that "[t]he house was built in 1985." (*Id.* ¶ 4.) That the gradual process leading to the "substantial impairment" was punctuated by allegedly sudden "release points" does not make the "substantial impairment," i.e., the alleged collapse, a sudden event.

Moreover, the Policy requires an "entire collapse" for Plaintiffs to be entitled to coverage under the "collapse" provision. (ECF No. 22-2 at 38.) Even reading the amended complaint in the light most favorable to Plaintiffs, I find that Plaintiffs fail to allege that an "entire collapse" has occurred. As discussed, the only observable loss that the Plaintiffs allege to have occurred is cracking. (*See* ECF No. 20 ¶¶ 7-9, 16 (alleging that their basement walls exhibited "a series of horizontal and vertical cracks throughout," "pattern cracking," and a "cracking condition").) The allegations that "[i]t is only a question of time until the basement walls . . . fall in," and that "external forces *may* cause a series of sudden events where the basement walls bulge and shift in some increment pieces of the concrete become dislodged and fall[] to the floor" underscore that an "entire collapse" has yet to occur. (*Id.* ¶¶ 13, 15 (emphasis added).) *See Agosti v. Merrimack Mut. Fire Ins. Co.*, 279 F. Supp. 3d 370, 379-80 (D. Conn. 2017) (granting Allstate's motion to dismiss a claim based on language requiring an "entire collapse," and finding that "the term 'entire collapse' is susceptible of only one reasonable interpretation,' namely, an 'actual collapse'");

13

*Carlson v. Allstate Ins. Co.*, No. 15-CV-1045 (MPS), 2017 WL 4285687, at *9 (D. Conn. Sept. 27, 2017) ("[n]o reasonable juror could find that 'pieces of the concrete within the wall falling to the floor' from gaps left by cracks or a 'wall going from straight and plumb to shifting inward some increment' means that an 'entire collapse' has occurred"); *Valls v. Allstate Ins. Co.*, No. 16-CV-1310 (VAB), 2017 WL 4286301, at *5 (D. Conn. Sept. 27, 2017) (finding that plaintiffs failed to allege a "complete collapse" under similar policy language). As a result, Plaintiffs' claim that the loss alleged is covered as a "collapse" is implausible.[5] Plaintiffs' breach of contract claim therefore fails.

### B. CUIPA/CUTPA

Allstate also moves to dismiss Count Two, which alleges a violation of CUIPA and CUTPA. "A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014). To state a CUIPA/CUTPA claim, Plaintiffs must plausibly allege that Allstate "engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014). The CUIPA provision relevant to this case is the prohibition of "[u]nfair claim settlement practices" under Conn. Gen. Stat. § 38a-816(6). Where an insurer's interpretation of an insurance policy is correct, however, there can be no violation of CUIPA/CUTPA. *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008) (affirming dismissal of CUIPA/CUTPA claim after determining that defendant insurer's interpretation of an insurance policy was correct).

---

[5] Allstate also argues that Plaintiffs' alleged loss is excluded under other provisions of the Policy, including exclusions of coverage for "rust or other corrosion" or for "faulty, inadequate or defective . . . materials used in repair, construction, renovation or remodeling." (ECF No. 22-2 at 30-31.) Because I find that Plaintiffs' alleged loss does not fall under the definition of "collapse" or under any other coverage claimed by Plaintiffs, I need not and do not address these arguments.

Because I find that Allstate's interpretation of the Policy was correct, Plaintiffs' CUIPA/CUTPA claim necessarily fails.

## IV. Conclusion

For the reasons stated above, Allstate's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
July 24, 2018